UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIE STRONG,

                     Petitioner,

     v.                                                   9:07-CV-0878
                                                          (NAM/GHL)

JAMES A. MANCE,

                     Respondent.
_____

APPEARANCES:                                   OF COUNSEL:

WILLIE STRONG
Petitioner, *pro se*

HON. ANDREW M. CUOMO                   THOMAS B. LITSKY, ESQ.
Office of the Attorney General                   Assistant Attorney General
State of New York
Counsel for Respondent
120 Broadway
New York, New York 10271

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION & ORDER[1]

      Petitioner Willie Strong, *pro se*, was an inmate in the custody of the New York State Department of Correctional Services. Petitioner has been released from custody. After a jury trial in December of 2002 in New York State Supreme Court, Onondaga County, Petitioner was found guilty of Sexual Abuse in the First Degree. Dkt. No. 1. Petitioner was sentenced to serve a prison term of seven years with one year of post-release supervision. *Id.*

      Petitioner's conviction was affirmed by the Appellate Division, Fourth Department, and leave to appeal to the Court of Appeals was denied. *People v. Strong*, 17 A.D.3d 1121 (N.Y. App.

---

[1] This action has been referred to the undersigned by Chief District Judge Norman A. Mordue for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(c).

Div. 2005), *leave denied* 5 N.Y.3d 795 (2005).

Petitioner filed a motion to vacate judgment under N.Y. C.P.L. § 440.10 ("§ 440 motion"). Ex. I.[2] The motion was denied on April 7, 2006. Ex. L. Leave to appeal was denied. Ex. O.

Petitioner also filed a petition for writ of error coram nobis. Ex. P. The petition was denied on February 2, 2007. Ex. Q. Leave to appeal was denied. Ex S.

In his petition, Petitioner raises the following grounds for habeas relief: (1) defense counsel was ineffective; and (2) the prosecutor engaged in misconduct. Dkt. No. 1. For the reasons which follow, it is recommended that the petition be denied.

## I. BACKGROUND

On June 14, 2002, MF, a seventy-two year old woman, was discharged from University Hospital in Syracuse, New York, following treatment for stomach cramps and diarrhea. Trial Transcript ("TT") 361-63. Petitioner, an employee of Able Medical Transportation, transported MF from the hospital to her apartment. TT 604-05, 850-53. Once inside MF's apartment, Petitioner touched MF's vagina with his hands. TT 368-76. Allegedly, Petitioner also touched MF's vagina with his mouth. TT 375. When MF asked Petitioner to stop, he initially refused. TT 372. Petitioner later offered MF a pill, which she took before falling asleep. TT 376-77. When MF awoke, she noticed that she was naked. TT 378. She then called her daughter and the police. TT 377-78, 473-74. MF was taken to University Hospital where a sexual assault examination was performed. TT 378, 535-39.

Petitioner signed a written statement acknowledging that he "rubbed [] ointment on [MF's]

---

[2] The exhibits have been filed under seal pursuant to the Court's Order granting a limited sealing order. Dkt. No. 10.

inner legs and in her vagina just to loosen her up." TT 715-16. Petitioner was charged with Sodomy in the First Degree and Sexual Abuse in the First Degree.[3] TT 316.

## II. DISCUSSION

A.     **Applicable Standard of Review**

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States. 28 U.S.C. § 2241(c). Relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *DiGuglielmo v. Smith*, 366 F.3d 130, 136-137 (2d Cir. 2004). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim that was adjudicated on the merits in state court proceedings unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *Carey v. Musladin*, 127 S. Ct. 649, 653 (2006); *Campbell v. Burgess*, 367 F. Supp. 2d 376, 380 (W.D.N.Y. 2004).

A decision is adjudicated "on the merits" when it finally resolves the claim, with res judicata effect, based on substantive rather than procedural grounds. *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001). This is so, "even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Id.* at 312. To determine whether a state court has adjudicated a claim "on the merits," a federal habeas court must examine three "clues" to classify the state court decision as either (1) fairly appearing to rest primarily on federal law or to be interwoven

---

[3] Petitioner was also charged with Criminal Possession of a Controlled Substance in the Seventh Degree, but the charge was dismissed after the drugs were suppressed. 10/25/02, 11/08/02, 11/15/02 Hearing Transcripts.

with federal law; or (2) fairly appearing to rest primarily on state procedural law.[4] *Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir. 2006). "Absent a clear and express statement of reliance on a state procedural bar," decisions in the first category are deemed to have been made "on the merits" of the federal claim. *Id.*

A decision on the merits is contrary to clearly established federal law when it is either contrary to Supreme Court precedent on a question of law or opposite to a relevant Supreme Court case with materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A state court unreasonably applies federal law when the state court correctly identifies the governing legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Although "[s]ome increment of incorrectness beyond error is required" in order to grant a federal habeas application, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quotation marks and citation omitted); *see also Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006), *cert. denied*, 549 U.S. 1215 (2007). The state court's determination of a factual issue is presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005), *cert. denied*, 546 U.S. 884 (2005); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

**B.     Effectiveness of Trial Counsel**

Petitioner argues that defense counsel, Nikki Platenick, Esq., was ineffective for (1) failing

---

[4] The three "clues" to the basis of a state court's decision are (1) the face of the state court opinion; (2) whether the state court was aware of a procedural bar; and (3) the practice of state courts in similar circumstances. *Jimenez*, 458 F.3d at 145, n. 16.

4

to object to three of the prosecutor's peremptory challenges, thus failing to preserve a *Batson* claim[5] for appellate review; (2) waiving his right to a preliminary hearing and for failing to seek his pre-indictment release; and (3) failing to object to the "coaching" of MF by a courtroom spectator. Dkt. No. 1 & Ex. I.  Respondent argues that these claims are not cognizable or without merit.  Dkt. No. 12.

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: (1) that counsel's representation fell below an objective standard of reasonableness, measured in the light of prevailing professional norms; and (2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  *Strickland v. Washington*, 446 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland*.).  There is a strong presumption that counsel's conduct fell within the wide range of reasonable assistance and that counsel's actions constituted sound trial strategy under the circumstances.  *Cuevas v. Henderson*, 801 F.2d 586, 589-90 (2d Cir. 1986).

Initially, the Court notes that counsel's conduct was objectively reasonable.  Before trial, counsel successfully persuaded the trial court to suppress certain evidence.  Ex. B at A17-27.  Counsel also successfully made a *Sandoval* application, Ex. B at A47, which precluded the prosecutor from asking Petitioner about four misdemeanor convictions, including one for Sexual

---

[5] *Batson v. Kentucky*, 476 U.S. 79 (1986).

Misconduct.  11/26/02 Transcript at 23-29.

At trial, counsel was an active participant during voir dire.  TT 19-294.  She asked the potential jurors numerous questions.  *Id.*

During her opening statement, counsel argued that Petitioner vehemently denied the charges.  TT 324-26.  She also argued that the written statement signed by Petitioner was involuntary and inaccurate.  TT 325.

Also, counsel vigorously cross-examined several witnesses.  For instance, counsel elicited from Dr. Elliot Rodriquez, who treated MF at the hospital, that he noted that MF took several medications that are used to treat psychiatric conditions.  TT 339.  She also questioned him regarding any potential side effects that could have been caused by the pain medication he gave MF and the numerous medications she took.  TT 340.

Counsel also cross-examined MF at length.  TT 415-50.  MF admitted that she sought substance abuse treatment for overmedicating on Klonopin;[6] and that she had a "drug addiction problem" for thirty years.  TT 417-19.  MF also admitted that after she called the police and was treated at the hospital on June 15, 2002, she never mentioned to the doctors, nurses, and Detective John Nolan that Petitioner placed his mouth on her vagina.  TT 439-41.  MF also admitted that she voluntarily took the pill that Petitioner gave her.  TT 443.

Counsel also strongly cross-examined Officer Thomas Skardinski, who responded to MF's 911 call, eliciting testimony from this witness that he did not write a statement and have MF sign it at that time; that he did not remember MF complaining that she was physically hurt in any way; and

---

[6] Klonopin is used to treat convulsive disorders and panic disorder.  *The PDR Pocket Guide to Prescription Drugs* 739 (8th ed. 2008).

6

that MF had no visible bruises.  TT 481, 487, 490, 492.

Counsel also cross-examined Detective Nolan, who interviewed MF at the hospital, eliciting testimony from him in which he admitted that MF never made reference to any mouth-to-vagina contact.  TT 517, 521.

During the People's case, counsel made several objections that were sustained.  TT 588-89, 633.  Counsel also moved to dismiss the case.  TT 766-75.  She pointed out, *inter alia*, that MF never testified that Petitioner was the person who committed the alleged acts.  TT 767-68.

Counsel then presented a strong defense.  She called the paramedic, Barbara Harris, who transported MF to the hospital the day before the alleged incident.  TT 794-99.  Upon counsel's questioning, this witness testified that when she arrived at MF's apartment, MF was leaning against the doorjamb and was naked and "covered head[-]to[-]toe in fecal material."  TT 799.

Counsel also called a forensic scientist, Rebecca Post, who testified as to the absence of semen on the vaginal swabs, anal swabs, and underwear that were obtained from MF.  TT 831-82.  Post also stated that the vaginal swabs did not contain a specific component found in saliva.  TT 831-32.

Counsel also called Petitioner, who testified that he simply rubbed ointment on MF's ankle at her request.  TT 857.  He stated that he never touched MF's vagina with his hands or mouth.  TT 865.

Counsel also presented a comprehensive summation.  TT 905-17.  She argued that it was the People's burden to prove Petitioner's guilt beyond a reasonable doubt, and that there were "a number of reasonable doubts" in the case.  TT 906.  She pointed out the contradictory nature of certain testimony in order to undermine MF's credibility.  TT 908-10.  She also reminded the jury

7

that the vaginal swab showed no saliva. TT 911. She further reminded the jury that certain witnesses testified that MF never mentioned any mouth-to-vagina contact. TT 909. Ultimately, Petitioner was found not guilty of the sodomy charge. TT 1012.

### 1. Alleged Failures to Make a *Batson* Challenges

Petitioner argues that counsel was ineffective because she failed to object to the prosecutor's use of peremptory challenges regarding three potential jurors whom Petitioner describes as "African American." Dkt. No. 1 at 4. The petition contains no identifying information as to these potential jurors, therefore reference was made to Petitioner's § 440 motion in which he identified the three potential jurors as Linda Littlejohn, Linda Casey, and Viola Graelish. Ex. I at 5. Respondent argues that this claim is meritless. Dkt. No. 12 at 22-24.

During voir dire, the prosecutor exercised peremptory challenges to strike Linda Littlejohn, Linda Casey, and Viola Graelish. TT 147-48, 284-85. Defense counsel made no objections.

On direct appeal, Petitioner filed a supplemental *pro se* brief in which he claimed that the jury was not fair and impartial. Ex. D. The Appellate Division rejected this claim as follows:

> Defendant failed to preserve for our review his contention in his pro se supplemental brief that reversal is warranted based on an alleged *Batson* violation, the only contention explicitly set forth in the pro se supplemental brief. We decline to exercise our power to review that contention as a matter of discretion in the interest of justice.

*Johnson*, 17 A.D.3d at 1122 (citations omitted).

In his § 440 motion, Petitioner argued that counsel was ineffective for failing to object to the "exclusion" of African-Americans from the jury panel. Ex. I. The trial court rejected this claim "because the Defendant was present throughout the entire jury selection process and failed to raise the issue to the court during jury selection process, before the trial, or prior to being sentenced,

8

pursuant to CPL § 440.10(3)(a). In any event, the Defendant's claim is also without merit." Ex. L at 5. The court also noted the following:

> [D]efense counsel was quite effective at determining who she wanted to serve as potential jurors. She conducted thorough questioning of the jurors to determine which jurors were potentially unfavorable to her client. She exercised challenges for cause effectively. In addition, defense counsel consulted with the Defendant extensively as to which jurors were to be challenged for cause and which jurors would be excluded by way of peremptory challenges. The fact that she did not raise *Batson* [] objections, does not render her representation ineffective.[7]

Ex. L at 6.

This determination was not contrary to, or did not involve an unreasonable application of, clearly established Supreme Court law.

In *Batson v. Kentucky*, 476 U.S. 79, 84 (1986), the Supreme Court reaffirmed that a state's purposeful exclusion of jurors based on race violates the Equal Protection Clause of the Constitution. The *Batson* analysis applies to peremptory challenges by a criminal defendant as well as by a prosecutor. *Georgia v. McCollum*, 505 U.S. 42, 59 (1992).

First, the party objecting to the peremptory challenge must make a prima facie showing that the potential juror was struck because of his or her race. *Batson*, 476 U.S. at 94-95; *see also*

---

[7] The Supreme Court added this footnote to their decision: In the Defendant's CPL §440.10 motion, he states that the jury pool consisted of 80 potential jurors, four of whom were identified by the Defendant as "African American" and seventy-six of whom were identified by the Defendant as "Caucasian." Of the four "African American" potential jurors, one was excused for "legal reason." The Defendant does not challenge that determination. The remaining "three African American jurors" were excluded by the People's peremptory challenges. These jurors consisted of a social worker/assistant dean of a university (and wife of a city court judge), and two employees of the hospital where the victim was a patient. The Defendant states, in his motion papers, that perhaps they were excluded because "they may have firsthand knowledge of the truthfulness of the complainant's statement." This reason alone would have been sufficient to withstand constitutional scrutiny under *Batson v. Kentucky*, 476 US 79 (1986), had a *Batson* objection been made. Ex. L at 6 n.5.

*Hernandez v. New York*, 500 U.S. 352, 358 (1991).  A prima facie case may be established by showing a pattern of strikes exercised against minority prospective jurors.  *Batson*, 476 U.S. at 97.  Second, once a prima facie case is established, the proponent of the peremptory challenge must offer a race-neutral explanation for striking the potential juror.  *Id.*  Finally, the trial court must consider whether the moving party carried his burden of proving that the challenge was motivated by purposeful discrimination.  *Id.* at 96.

Here, Petitioner's claim is purely speculative and unsubstantiated.  Unsubstantiated conclusions, opinions, or speculation cannot serve as a basis for habeas relief.  *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (asserting that federal courts should not grant "habeas relief on the basis of little more than speculation with slight support").

There is no indication that the prosecutor excluded potential jurors because of their race.  Rather, there were non-pretextual, race-neutral reasons for excluding these potential jurors.  For instance, Linda Littlejohn stated that her husband was the Honorable Langston McKinney, a Syracuse City Court Judge; that she knew or had met several people involved in the case, including the court reporter, one of the prosecutors, and the presiding judge; and that she had "a couple" of cousins who were judges.  TT 70-71, 122.  She also stated that she had previously worked as a social worker in a gerontological agency.  TT 102-03.  Further, she stated that there was a possibility that she heard about the case.  TT 70.

Linda Casey stated that she worked as a nurse practitioner in the neurosurgery department at University Hospital, which is where MF was initially treated before being transported by Petitioner.  TT 178, 232.  MF later underwent the sexual assault examination at this facility as well.  TT 535-39.  Casey also stated that she knew some of the potential medical witnesses professionally.  TT 178.

Viola Graelish worked at the same hospital,[8] handling medical records. TT 110. She stated that her son had been charged with committing a crime for which he received probation. TT 60. When first asked if she held any grudges against the police or the District Attorney's Office regarding the handling of her son's case, she stated that she was unsure. TT 61. In addition, Graelish acknowledged that she "probably heard about" this case. TT 63.

Therefore, Petitioner's claim that counsel should have objected to the prosecutor's use of peremptory challenges is without merit. An attorney's alleged failure to pursue a meritless *Batson* claim cannot be a foundation for an ineffective assistance of counsel claim. *See*, *e.g.*, *United States v. Franklin*, 157 F.3d 90, 97 (2d Cir. 1998) (finding no ineffective assistance of counsel where the *Batson* challenge was meritless), *cert. denied*, 525 U.S. 1027 (1998); *Morales v. Greiner*, 273 F. Supp. 2d 236, 253 (E.D.N.Y. 2003) ("There is simply no cognizable claim under *Strickland* where the ineffectiveness concerns an alleged *Batson* violation but no indication of an unrepresentative, biased, or otherwise unfair jury."), *certificate of appealability denied*, 381 F.3d 47 (2d Cir. 2004).[9]

In light of the foregoing, Petitioner failed to meet either prong of the *Strickland* standard. Accordingly, the petition on this ground should be denied.

**2.    Alleged Failures to Exercise Right to Preliminary Hearing and to Seek Petitioner's Pre-Indictment Release**

Petitioner argues that the People "failed to meet their C.P.L. [§]180.80 and [§] 190.80 obligations," and that counsel was ineffective for failing to object to these violations. Dkt. No. 1 at

---

[8] Viola Graelish testified that she worked at Upstate Medical Center. TT 110. The names Upstate Medical Center and University Hospital are used interchangeably.

[9] *See United States v. Udogwu*, 03 Civ. 422, 99 Cr. 795, 2003 WL 21344749 at *2-3 (S.D.N.Y. June 9, 2003) (finding no ineffective assistance of counsel where counsel did not make a *Batson* motion because there was no basis for counsel to do so).

11

4. Liberally construing the petition and with reference to Petitioner's § 440 motion, it appears that he is arguing that defense counsel was ineffective for waiving the preliminary hearing, and for failing to seek his pre-indictment release pursuant to C.P.L. § 190.80.  *See id.* & Ex. I at 4. Respondent argues that these claims are not cognizable and meritless.  Dkt. No. 12 at 25-27.

>N.Y. C.P.L. § 180.80 provides as follows:
>
>Upon application of a defendant against whom a felony complaint has been filed with a local criminal court, and who, since the time of his arrest or subsequent thereto, has been held in custody pending disposition of such felony complaint, and who has been confined in such custody for a period of more than one hundred twenty hours or, in the event that a Saturday, Sunday or legal holiday occurs during such custody, one hundred forty-four hours, without either a disposition of the felony complaint or commencement of a hearing thereon, the local criminal court must release him on his own recognizance unless:
>
>1. The failure to dispose of the felony complaint or to commence a hearing thereon during such period of confinement was due to the defendant's request, action or condition, or occurred with his consent; or
>
>2. Prior to the application:
>
>(a) The district attorney files with the court a written certification that an indictment has been voted; or
>
>(b) An indictment or a direction to file a prosecutor's information charging an offense based upon conduct alleged in the felony complaint was filed by a grand jury; or
>
>3. The court is satisfied that the people have shown good cause why such order of release should not be issued. Such good cause must consist of some compelling fact or circumstance which precluded disposition of the felony complaint within the prescribed period or rendered such action against the interest of justice.

N.Y. C.P.L. § 180.80.

>N.Y. C.P.L. § 190.80 provides as follows:
>
>Upon application of a defendant who on the basis of a felony complaint has been held by a local criminal court for the action of a grand jury, and who, at the time of such order or subsequent thereto, has been committed to the custody of the sheriff

> pending such grand jury action, and who has been confined in such custody for a period of more than forty-five days, or, in the case of a juvenile offender, thirty days, without the occurrence of any grand jury action or disposition pursuant to subdivision one, two or three of section 190.60, the superior court by which such grand jury was or is to be impaneled must release him on his own recognizance unless:
>
> (a) The lack of a grand jury disposition during such period of confinement was due to the defendant's request, action or condition, or occurred with his consent; or
>
> (b) The people have shown good cause why such order of release should not be issued. Such good cause must consist of some compelling fact or circumstance which precluded grand jury action within the prescribed period or rendered the same against the interest of justice.

N.Y. C.P.L. § 190.80.

On direct appeal, Petitioner argued in his supplemental *pro se* brief that the trial court erred by not affording him a preliminary hearing. Ex. D at 1. The Appellate Division rejected this claim, finding that "defendant is not entitled to reversal of the judgment based on the fact that no preliminary hearing was held." *Johnson*, 17 A.D.3d at 1121 (citation omitted).

Petitioner also raised the two claims presently at issue in his § 440 motion. Ex. I at 4. The trial court rejected these claims "as without merit," explaining as follows:

> [T]he Defendant argues that counsel failed to exercise his right to a preliminary hearing. This claim is rejected pursuant to CPL § 440.10(2)(a), because the issue has been raised and determined on appeal. In addition, the Defendant also argues that counsel was ineffective for failing to procure his pre-indictment release pursuant to CPL § 190.80. This claim is also rejected because the Defendant failed to raise this issue previously, pursuant to CPL § 440.10(3)(a). The Defendant could have easily filed a *pro se* writ of habeas corpus and secured his own CPL § 190.80 release. In any event, it is of no consequence since the Defendant has failed to show any prejudice such that his conviction should be vacated pursuant to CPL § 440.10.

Ex. L at 5.

Regarding Petitioner's first argument that counsel was ineffective by waiving the

13

preliminary hearing, there is no federal constitutional right to a preliminary hearing. *Bilbrew v. Garvin*, No. 97-CV-1422, 2001 WL 91620, at *9 (E.D.N.Y. Jan. 10, 2001) (citing *Gerstein v. Pugh*, 420 U.S. 103, 118-19 (1975)); *John v. People*, No. 91 CIV. 7634, 1992 WL 261282, at *1 (S.D.N.Y. Sept. 29, 1992) (denying petition because "there is no federal constitutional requirement for a preliminary hearing as a prerequisite to a valid conviction at trial"). Thus, Petitioner's claim is not cognizable here.

Regarding Petitioner's second argument that counsel was ineffective by failing to seek his pre-indictment release pursuant to C.P.L. § 190.80, this claim is grounded in the state criminal procedure statute, and accordingly, is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of the Constitution or a federal law or treaty); *Estelle*, 502 U.S. at 67-68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that habeas corpus review not available to remedy alleged error of state law).

Therefore, Petitioner has failed to meet either prong of the *Strickland* standard, and the petition on this ground should be denied.

### 3. Alleged Failure to Object to Courtroom Spectator

Petitioner states in his petition that the trial court removed MF's "friend" from the courtroom "for coaching reasons." Dkt. No. 1 at 5. Petitioner claims that the friend was sitting directly behind the prosecutor. *Id.* at 5, 7. Petitioner refers to his § 440 motion in which he argued that defense counsel was ineffective for failing to object to the alleged "coaching." Ex. I at 5-6. Respondent argues that this claim is meritless. Dkt. No. 12 at 27-28.

14

> The trial court rejected this argument, as follows:
>
> A review of the trial record, indicates that the court, independently, asked who was the person seated behind the prosecutor's table. The prosecutor indicated that it was a person accompanying the victim and not a witness in the case. *See* Trial Transcripts, pg. 373-74. The court then directed [] the spectator to "stand outside the line of the witness." *See* Trial Transcripts, pg. 374. Thereafter, the spectator complied and the witness continued to give her testimony. The court's instruction to the spectator to move outside the line of the witness, helped to cure any alleged improprieties. As such, viewed under the totality of the circumstances, the alleged isolated error in counsel's representation "did not rise to the level of ineffectiveness." *See People v. Flores*, 84 NY2d 184, at 188-189 [1994].

Ex. L at 7.

This determination was not contrary to, or did not involve an unreasonable application of, clearly established Supreme Court law.

Initially, I note that Petitioner's "coaching" claim is unsubstantiated and purely speculative. Unsubstantiated conclusions, opinions, or speculation cannot serve as a basis for habeas relief. *See Wood*, 516 U.S. at 8 (asserting that federal courts should not grant "habeas relief on the basis of little more than speculation with slight support").

The record does not establish that MF was being coached by a spectator. The record simply reflects that the trial court asked one of the prosecutors who was sitting behind the other prosecutor. TT 373. The prosecutor responded that the spectator was "with" MF and was "not" a witness. TT 373. The court then asked the spectator to "stand outside of the line of the witness." TT 374. The prosecutor responded, "Okay." TT 374. Nothing in this exchange indicates that MF was being coached by the spectator. Therefore there was no reason for defense counsel to object. Accordingly, counsel did not render ineffective assistance by failing to make a baseless objection. *See United States v. DiPaolo*, 804 F.2d 225, 234 (2d Cir. 1986) (holding that the failure to make a

meritless objection does not constitute ineffective assistance). Thus, Petitioner has failed to meet either prong of the *Strickland* standard, and the petition on this ground should be denied.

**C.     Prosecutorial Misconduct**

Petitioner argues that the prosecutor engaged in misconduct regarding testimony from the police officer who responded to MF's 911 telephone call. Dkt. No. 1 at 5. For support, Petitioner refers to his § 440 motion and the trial transcript. *Id.* Thus, liberally construing the claim, it appears that Petitioner is arguing that the prosecutor knowingly presented false testimony in light of the fact that MF and the officers offered inconsistent testimony regarding whether MF signed a written statement. Respondent argues that this claim is without merit. Dkt. No. 12 at 29-31.

MF testified that after she spoke to her daughter, she called 911. TT 435. During cross-examination, defense counsel asked MF if the responding police officer took a statement from her that she signed. TT 436. MF replied, "Yeah. He said, Now read this over and be sure of what you're signing because you don't want to get somebody in trouble that, you know, that doesn't deserve to be or whatever. You know, they could lose their job and everything." TT 436. Counsel then asked MF whether the police officer who came to the hospital also obtained a written statement from her. TT 436-37. MF responded that she was unsure. TT 437.

In contrast to MF's testimony, Officer Skardinski, who responded to the 911 call, testified that he did not take a written statement from MF when he was at MF's apartment. TT 482, 492. Similarly, Detective Nolan, who interviewed MF in the hospital's emergency room, testified that he did not obtain a written affidavit from MF. TT 512.

The trial court rejected this claim as follows:

With regard to the . . . claim that [] there was prosecutorial misconduct when the

16

> People knowingly presented the false testimony of the officers who interviewed the victim and investigated the case, those claims are similarly rejected. It is the jury's duty to determine the credibility of a witness. Here, there was ample opportunity to refute the testimony of the investigating officers, and defense counsel engaged in effective cross examination of each of them. Nonetheless, the jury believed the testimony of the officers and the victim over the Defendant. Absent a verdict that is contrary to the law or the facts of the case, the court will not disturb the jury's verdict. As a result, all of the Defendant's arguments are without merit.

Ex. L at 7-8.

This determination was not contrary to, or did not involve an unreasonable application of, clearly established Supreme Court law.

Where a conviction is achieved with the aid of testimony that the prosecution knew or should have known to be false, it "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). A successful challenge to a conviction based on the grounds of prosecutorial misconduct therefore requires the defendant to show that "(1) there was false testimony, (2) the [prosecution] knew or should have known that the testimony was false, and (3) there was 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *United States v. Helmsley*, 985 F.2d 1202, 1205-06 (2d Cir. 1993) (quoting *Agurs*, 427 U.S. at 103).

Petitioner has failed to establish any of these three requirements. Petitioner simply pointed out that there was inconsistent testimony. However, inconsistencies in testimony are insufficient to establish that the testimony was false. *See United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001); *United States v. Gambino*, 59 F.3d 353, 365 (2d Cir. 1995), *cert. denied*, 517 U.S. 1187 (1996) (noting that "even a direct conflict in testimony does not in itself constitute perjury") (citations omitted). Moreover, inconsistencies in testimony involve issues of credibility for the jury

to decide. *See Watkins v. Ercole*, No. 06 Civ. 15222, 2008 WL 4179187, at \*20 (S.D.N.Y. Sept. 9, 2008) (finding no prosecutorial misconduct where prosecutor offered inconsistent statements from a witness, and noting that inconsistencies in the testimony involved an issue of credibility for the jury to evaluate). Accordingly, Petitioner's claim is without merit and should be denied.

**WHEREFORE**, based upon the foregoing, it is hereby

**RECOMMENDED**, that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED**. Furthermore, I find that Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied*, 209 F.3d 107. Therefore, I recommend that no certificate of appealability issue with respect to any of Petitioner's claims; and it is further

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: April 2, 2010
       Syracuse, New York

George H. Lowe
United States Magistrate Judge